IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
FILED

APR 1 0 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent, | § | B-98-153 |
| | § | |
| vs. | § | C.R. NO. B-98-95 |
| | § | |
| NOE MENDOZA-BARCENAS | § | |
| Petitioner. | § | |
| (C.A. NO. B-98-153) | § | |

RESPONSE AND MOTION TO DISMISS
MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, "the government" files this response and motion to dismiss the motion for relief under 28 U.S.C. § 2255 filed by Noe Mendoza-Barcenas, "Mendoza-Barcenas", and in support thereof would respectfully show the court the following:

I.

JURISDICTION

A. Procedural history.

Mendoza-Barcenas was indicted in the United States District Court for the Southern District of Texas on February 17, 1998 (DOC 1). In the indictment, Mendoza Barcenas was charged with a violation of 8 U.S.C. 1326(a): after having been deported, Mendoza-Barcenas w found in the United States without first having obtai

the consent of the Attorney General of the United States. On February 25, 1998, Mendoza-Barcenas initially entered a plea of not guilty (DOC 2), but an hour later reached an accord with the government and entered a plea of guilty (DOC 3). The district judge accepted Mendoza-Barcenas' plea, found him guilty, ordered the preparation of a pre-sentence investigation report (PSR), and set the case for sentencing (DOC 4).

The court imposed Mendoza-Barcenas' sentence on May 13, 1998 (DOC 8). With a total offense level of 21 and a criminal history score that placed him in category IV, the applicable imprisonment range under the Sentencing Guidelines was 57 to 71 months (DOC 10-6). In accordance with the terms of the plea agreement, the district court remanded Mendoza-Barcenas into the custody of the Bureau of Prisons to serve a 57-month term of confinement that was to be followed by a three year term of supervised release. The court ordered Mendoza-Barcenas to pay the mandatory assessment of $100 (DOC 8).

Mendoza-Barcenas duly perfected an appeal to the United States Court of Appeals for the Fifth Circuit. On

April 16, 1999, the court of appeals issued an unpublished opinion affirming Mendoza-Barcenas' judgment of conviction and sentence (DOC 16). A true and correct copy of the opinion issued in Case No. 98-40634 is attached hereto as Exhibit A.

Mendoza-Barcenas filed his motion for relief under 28 U.S.C. § 2255, Civil Action No. B-98-153, on October 22, 1998 (DOC 14). Since Mendoza-Barcenas' appeal was pending and his judgment of conviction not final, this court ostensibly held the matter in abeyance until February 11, 2000, when it entered an order denying Mendoza-Barcenas' motion to withdraw his § 2255 complaint.

B.  Basis of jurisdiction

Mendoza-Barcenas invoked this court's jurisdiction under 28 U.S.C. § 2255. In his motion he complains that his conviction should be set aside because his guilty plea was not knowingly, intelligently, and voluntarily entered because his trial attorney, the Federal Public

3

Defender, rendered constitutionally infirm assistance. This court is properly vested with jurisdiction under 28 U.S.C. § 2255.

II.

FACTS UNDERLYING
THE CONVICTION AND SENTENCE

A.   Re-arraignment - February 25, 1998.

The district judge opened the re-arraignment by outlining the procedure it proposed to follow.  Since several guilty pleas were being entered simultaneously, the court declared that the several defendants needed to respond to its questions individually.  The court observed that everything that was being said would be recorded and instructed the defendants to stop the proceeding and call anything they did not understand to the court's attention (DOC 13-2).

The judge explained that it was required to address each defendant individually, but with their agreement, all of the defendants could be arraigned at the same time.  The court observed that all of the rights it would talk about were personal to each defendant and not

4

collective. Thus, the court continued, reference to a right was reference to a right personal to the defendant not to the group as a group. Nevertheless, with their agreement, the arraignment could be conducted simultaneously. The court observed that all of the defendants agreed to a simultaneous proceeding. Counsel did not object (DOC 13-2, 3).

The court explained that the law required the court to conduct the proceedings in English but, since all of the defendants were apt to be more fluent in Spanish and since their respective attorneys were equally fluent in Spanish, the court declared that the proceedings could be conducted in Spanish with their agreement and the court interpreter would interpret the proceedings into English for the court reporter. The defendants elected to proceed in Spanish; counsel did not object (DOC 13-3, 4).

The court then summarized the logistics of the proceeding:

> Now, we will use the usual procedure. I will elicit a response from each individual defendant. The record will show what the response is. It is going to become incumbent upon counsel to show the record that the record

5

is in error.

Any objection if we proceed accordingly?
(DOC 13-4).  There was no objection (*Id.*).

The court placed the several defendants under oath
(DOC 13-5).  After the oath had been administered, the
court admonished the defendants that they were now
subject to the penalties for perjury.  The judge
summarized the consequences for perjury including a brief
description of the effect of supervised release.  The
defendants collectively declared that they understood
this admonishment (DOC 13-5, 6).


Prior to launching into the colloquy mandated by Rule
11 of the Federal Rules of Criminal Procedure, the court
asked the defendants whether or not they were satisfied
with the representation of their respective attorneys.
All declared that they were satisfied (DOC 13-6).

The judge advised the defendants that by entering a
guilty plea they would be waiving several rights
including the right not to testify against oneself.  The
court observed that everyone understood that admonishment

6

(DOC 13-6).

The next set of inquiries focused on the defendants' competence. During the course of these inquiries, Mendoza-Barcenas alerted the court to the fact his ability to read and write was limited (DOC 13-7). In light of this disclosure the judge took pains to insure that all of the defendants were capable of discerning right from wrong. The record reflects that the defendants demonstrated their ability to distinguish right from wrong. Moreover, the lawyers attested to their respective clients' competence (DOC 13-7, 8). Indeed, each of the defendants individually told the court that they understood the charges lodged against them including Mendoza-Barcenas (DOC 13-9).

The court summarized the direct consequences of a guilty plea. The court cited the maximum term of imprisonment, the maximum fine, the fact that a term of supervised release would be imposed and that each defendant would be required to pay a mandatory special assessment. The judge declared that the sentencing guidelines would be applied noting that it had a limited

power to depart from these guidelines. Each defendant individually, including Mendoza-Barcenas (DOC 13-10), told the court that he understood these consequences.

The government told the court that there were plea numerous plea agreements. The court explained that all of those charged with being in the United States illegally were to receive adjustments for pleading guilty and a recommendation that the court impose a term of imprisonment from the low end of the applicable guideline range (DOC 13-13). All of the defendants acknowledged their understanding of the plea agreement and declared that no one had promised them anything else (DOC 13-14).

The judge admonished the defendants that the court did not have to abide by the government's recommendation and that if the court did not follow the recommendation, the defendants did not have a right to withdraw their pleas. The defendants collectively acknowledged their understanding of this admonishment (DOC 13-14).

The next topic addressed by the court was the right to a jury trial and the rights attendant to a jury trial (DOC 13-14, 15). The court advised the defendants that

8

by pleading guilty they would be waiving their right to a jury trial and the rights attendant to such a trial. The record reflects that the defendants understood this admonishment (DOC 13-15). The court noted that by pleading guilty the defendants would be effectively waiving their rights to confront the witnesses against them as well as their right to a direct appeal. With respect to the right to appeal, the court noted that if the defendants could not afford the assistance of counsel in perfecting an appeal, a lawyer would be appointed to represent them and the costs of the appeal would be covered. The record shows that all of the defendants acknowledged their understanding of these rights (DOC 13-16).

The court outlined the elements of the offenses lodged against each of the defendants, including Mendoza-Barcenas, who had been charged with re-entering the United States after having been previously deported without having obtained the consent of the Attorney General (DOC 13-18, 19). The defendants declared that they understood the allegations of the respective

9

indictments and all entered a plea of guilty because they were guilty. Moreover, all of the defendants declared that no one had induced them to enter their pleas with promises, force, or threats (DOC 13-19). Every defendant including Mendoza-Barcenas declared that they wanted to plead guilty (DOC 13-20).

The court then satisfied itself that there was a factual basis for the plea by asking whether the defendants had been deported and whether they had returned to the United States without the Attorney General's consent. After this admonishment, each defendant acknowledged his guilt individually including Mendoza-Barcenas (DOC 13-21). Thereafter, the judge found the defendants guilty, ordered the preparation of a PSR, and set the case for sentencing (DOC 13-22).

B. <u>Sentencing: May 13, 1998</u>.

Prior to the imposition of his sentence, Mendoza-Barcenas, through counsel, told the court that he did not have any objections to the PSR (DOC 11-2). In his brief allocution, Mendoza-Barcenas asked for leniency and pledged not to return to the United States (DOC 11-3).

10

The court then imposed the sentence: Mendoza-Barcenas was
ordered to serve a 57-month term of confinement that was
to be followed by a three-year term of supervised
release. The court ordered Mendoza-Barcenas to pay the
mandatory assessment of $100. The hearing concluded with
the court adopting the findings and recommendations of
the PSR.

IV.

MOTION TO DISMISS

A.   Mendoza-Barcenas' ground for relief.

Mendoza-Barcenas raises the ubiquitous complaint of
ineffective assistance of counsel. He proceeds from the
proposition that he entered his plea of guilty with the expectation
that he would be sentenced to a two-year term of imprisonment. It
would appear that Mendoza-Barcenas' learned trial counsel did not
anticipate that the trial court would adjust the base offense level
mandated by USSG § 2L1.2(a), that is 8, by adding 16 levels under
the authority § 2L1.2(b)(1)(A). Mendoza-Barcenas asserts that his
decision to enter a guilty plea turned on this two-year sentence
and, but for his attorney's advice in this regard, he would have
persisted in his plea of not guilty and proceeded to trial. The
latter assertion is balderdash.

Mendoza-Barcenas' buttresses his claim of ineffective

11

assistance of counsel with the observation that, had counsel objected to the recommendation that his prior conviction be deemed an "aggravated felony" as that term is defined at 8 U.S.C. § 1103(a)(43), USSG § 2L1.2 comment (n.1), he would have prevailed and would received the two-year sentence he expected. These assertions merit neither a grant of collateral relief nor an evidentiary hearing.

B.   Legal principles guiding resolution of the controversy.

Ineffective assistance of counsel claims are reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores-Ortega*, _ U.S. _, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id*. at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court

12

"must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted). Second, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993); *Goodwin v. Johnson,* 132 F.3d 162, 174 (5th Cir. 1998).

To prevail on his claims, Mendoza-Barcenas must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A

13

reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.*

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

In *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994), the Fifth Circuit reviewed the requirements for a successful ineffective assistance of counsel claim. The court observed that in a guilty plea scenario, the petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for that error. 37 F.3d at 206 (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985)). The defendant must affirmatively prove prejudice; a mere allegation of

14

prejudice is not sufficient. The petitioner must establish that but for his counsel's erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Armstead*, 37 F.3d at 206 (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)); *see also*, *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996). This assessment, in turn, will depend in part on a prediction of what the outcome of the trial might have been. *Id*. (citing *Hill v. Lockhart*, 474 U.S. at 56-58, 106 S.Ct. at 369-370).

To show prejudice in the sentencing context, Mendoza-Barcenas must show "a reasonable probability that but for trial counsel's errors his non-capital sentence would have been **significantly** less harsh." *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)). Under this standard, the court must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or

aggravating circumstances.   *Id.*

C.   <u>Application of the standard to the case *sub judice*</u>.

It is immediately apparent that had Mendoza-Barcenas insisted on going to trial, he would have been found guilty.   That he is an alien is beyond cavil.   His deportation subsequent to a conviction for a felony offense is documented and not subject to reasonable dispute.   At the end of a trial, Mendoza-Barcenas would not only have been found guilty he would have forfeited the three-level adjustment for acceptance of responsibility and thus be subject to a imprisonment range of 77 to 96 months.   Further, Mendoza-Barcenas' implicit allegation that he was promised a two-year term of confinement is refuted by the record.   A mere understanding that a defendant would receive a lesser sentence in exchange for a guilty plea does not abrogate that plea should a heavier sentence actually be imposed. *DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).   To prevail on a claim that a plea was induced by an attorney's advice to plead guilty with the

understanding that a lenient sentence would be imposed pursuant to a government recommendation, a petitioner must prove (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of any eyewitnesses to the promise. *Id.* (citing *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986)). Mendoza-Barcenas was not promised a specific sentence and he attested to this fact at his re-arraignment. Accordingly, his assertion that he was denied his right to the effective assistance of counsel is wholly without merit: counsel's advice that he plead guilty was reasonable and the propriety of the outcome is not undermined by counsel's mistaken belief that the district court would not have adopted the recommendation for a 16-level adjustment in Mendoza-Barcenas' offense level calculation.

A Section 2255 Motion requires a hearing unless the files, the motion, and the record of the case conclusively show that no relief is appropriate. 28 U.S.C. § 2255 (foll.), Rule 8(a). *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an

17

evidentiary hearing depends upon an assessment of the record. If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

Although the allegations of a *pro se* complaint are held to a less stringent standard than the formal pleading drafted by lawyers, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief, the cause will be dismissed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). The instant cause does not merit a hearing.

The government prays that the court enter an order denying Mendoza-Barcenas section 2255 relief under Rule 8(a) of the Rules following 28 U.S.C. § 2255.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

By: _____

JAMES L. TURNER
Assistant United States Attorney
TX Bar No. 20316950
SD Tex ID No.  1406
P.O. Box 61129
Houston, TX 77208
(713) 567-9102

19

ClickPDF - www.fasiso.com

## CERTIFICATE OF SERVICE

I, James L. Turner, do hereby certify that a copy of the foregoing Respondent's Motion to Dismiss Motion to Vacate Sentence has been mailed on this the 10th day of April, 2000, via certified mail, return receipt requested to

    Mr. Noe Mendoza-Barcenas
    Reg. No. 77761-079
    FCI Three Rivers
    P.O. Box 4200
    Three Rivers, Texas 78071

    JAMES L. TURNER
    Assistant United States Attorney